UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| DAVID M. SEMAS, *et al.*,<br><br>  Plaintiffs,<br><br> v.<br><br>CHEMETALL US, INC*., et al.*,<br><br>  Defendants. | Case No. 3:19-CV-00125-CLB<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br><br>[ECF Nos. 216, 218, 225] |

Currently pending before the Court are motions to dismiss filed against Plaintiffs David M. Semas ("Semas") and Metalast, Inc. ("Metalast") (collectively referred to as "Plaintiffs"). The first was filed by Defendants Chemetall US, Inc. ("Chemetall"), BASF Corp. ("BASF"), QualiChem, Inc. ("QualiChem"), Miles Chemical Co. ("Miles"), John Schneider and Associates, Inc. ("Schneider"), Ronatec C2C ("Ronatec"), and Southern Industrial Chemicals, Inc ("Southern"). (ECF No. 216.) Plaintiffs responded, (ECF No. 226), and the above Defendants replied. (ECF No. 229.) The second motion to dismiss, and an amendment to that motion, were filed by Defendant Albemarle Corp. ("Albemarle"). (ECF Nos. 218, 225.) Plaintiffs responded, (ECF No. 227), and Albemarle replied. (ECF No. 228.) For the reasons stated below, the Court grants both motions to dismiss.

I.  **BACKGROUND**

On November 19, 2018, Plaintiffs initiated this lawsuit in the United States District Court for the Central District of California against Chemetall, BASF, QualiChem, Miles, Schneider, Ronatec, Southern, and Albemarle (collectively referred to as "Defendants"). (ECF No. 1.) On March 1, 2019, the case was transferred to the District of Nevada. (ECF No. 61.) Chemeon Surface Technology, LLC ("Chemeon ST") is an intervenor. (ECF No. 21.)

///

Both motions to dismiss filed in this case allege that the instant litigation is precluded based on *Chemeon Surface Tech., LLC v. Metalast Int'l, Inc.*, No. 3:15-CV-00294-CLB, (D. Nev. June 3, 2015) (*Chemeon*). As determination of both motions to dismiss will involve discussion of both the instant case and *Chemeon*, the Court will discuss the relevant backgrounds for both.

A.     *Chemeon*[1]

The dispute in *Chemeon* arose from the breakup of a business and a disagreement over the terms of a subsequent settlement agreement entered into between Plaintiff Chemeon Surface Technology, LLC's ("Chemeon ST"), Counter-Defendants Dean Meiling ("Dean") and Madylon Meiling ("Madylon") (collectively referred to as "*Chemeon* Plaintiffs" or "the Meilings"), and Defendants and Counterclaimants David M. Semas ("Semas"), Metalast International, Inc. ("MI-INC"), and Metalast International, LLC ("MI-LLC") (collectively referred to as "*Chemeon* Defendants"). (ECF No. 627 at 1.) The Court characterized the case as having "a long and difficult history spanning over many years, several lawsuits, and various courts." (*Id.*)

On July 14, 2014, Metalast initiated an adversary proceeding in Semas's bankruptcy case asserting ownership of the Metalast trademark. (ECF No. 313 at 4.) Bankruptcy Judge Gregg W. Zive mediated a settlement of the dispute on January 27, 2015. (ECF No. 314-14.) Ultimately, the parties reached a settlement agreement. (ECF No. 627 at 7.) On March 11, 2015, the Bankruptcy Court entered its order approving the settlement agreement and all claims arising prior to that date were expressly released by the parties. (*Id.* at 10.) The settlement agreement included a provision which prohibited use of the term "Metalast" by the *Chemeon* Plaintiffs after June 15, 2015. (*Id.* at 23.)

///

---

[1]     Unless otherwise noted, citations to the record in this section are to the docket in *Chemeon*.

Chemeon filed suit on June 3, 2015, seeking relief for: (1) misappropriation of trade secrets under NRS 600A.030; (2) declaratory judgment of no trademark infringement; (3) cancellation of the logo trademarks; (4) common law trademark infringement; (5) copyright infringement; (6) intentional interference with prospective economic advantage; (7) unfair competition under 15 U.S.C. § 1125(a); (8) statutory deceptive trade practices/consumer fraud; and (9) unjust enrichment. (ECF No. 1.) On September 3, 2015, the *Chemeon* Defendants filed counterclaims against the *Chemeon* Plaintiffs, seeking relief for: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing (i.e., "bad faith"); (3) trademark dilution; (4) trademark infringement; (5) trademark infringement and unfair competition under state law; (6) trademark dilution under state law; and (7) specific performance of settlement. (ECF No. 51.)

On November 1, 2016, the Court granted a stipulation to voluntarily dismiss–**with prejudice**–claims for relief in the amended counterclaim. (ECF No. 199.) The counterclaims for trademark dilution, trademark infringement, trademark infringement and unfair competition under state law, and trademark dilution under state law were therefore dismissed **with prejudice**. (*Id*.) The dismissed counterclaims alleged that Plaintiffs impermissibly used "Metalast" to describe products marketed by Chemeon ST and therefore diluted and detracted from the Metalast trademark and created likely confusion and mistake "to deceive consumers as to the source or origin" of Metalast. (ECF No. 51 at 10-13.) On October 31, 2019, Chemeon filed its Third Amended Complaint, which became the operative complaint. (ECF No. 535.)

Following extensive pretrial motion practice, the Court held a bench trial on the remaining claims and counterclaims in November of 2020. (ECF Nos. 600, 603, 605, 606, 608.) Chemeon ST's claims that proceeded to trial were: (1) declaratory judgment, (2) common law trademark infringement, and (3) copyright infringement. (ECF No. 627 at 2.) The counterclaims were for: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, and (3) specific performance of the settlement agreement. (*Id.*) Critically, the issues presented at trial by the counterclaims included whether the

settlement agreement was breached by Chemeon ST's use of the term "formerly Metalast" and whether future use of the "formerly Metalast" name was prohibited. (*Id.*)

Following the bench trial, the Court entered findings of facts and conclusions of law. (ECF No. 627.) Judgment was entered pursuant to that order and the case was closed. (ECF No. 629.) As to whether the future use of the phrase "formerly Metalast" was prohibited, the Court concluded that Chemeon ST and the Meilings utilized the term "Metalast" on product labels, technical data sheets, safety sheets, business correspondence and documents and in a variety of other means in commerce in direct contravention to the ban provision after June 15, 2015. (ECF No. 627 at 23.) Consequently, the Court found that the way Chemeon utilized the term "formerly Metalast" or "formerly known as Metalast" as evidenced at the trial, breached the terms of the settlement agreement. (*Id.*) The Meilings and Chemeon ST were ordered to perform the settlement by halting all use of "Metalast" on any product labels, advertisements, sales orders, invoices, purchase orders, technical data sheets, safety data sheets, web pages, brochures, or other documents of commerce. (*Id.* at 42.)

Subsequently, the *Chemeon* Plaintiffs appealed the findings of fact and conclusions of law. (ECF No. 648.) On June 2, 2022, the Ninth Circuit affirmed in part and vacated and remanded in part the Court's findings of facts and conclusions of law. (ECF No. 657.) Specifically, the Ninth Circuit: (1) affirmed the Court's judgment in favor of the *Chemeon* Defendants' breach of contract counterclaim; (2) found the Court did not err in excluding Chemeon ST's trademark affirmative defense evidence and in excluding an Occupational Safety and Health Administration litigation brief; (3) affirmed the Court's judgment denying Chemeon ST's trademark infringement claims; (4) found the Court did not abuse its discretion in denying Chemeon ST's claim for attorney fees under the Lanham Act; and (5) found the Court erred when it granted summary judgment dismissing Chemeon ST's claim for trademark cancellation based solely on the fact that Chemeon did not have an interest in its "own mark." (*Id.*) On remand, the Ninth Circuit directed the Court to determine whether Chemeon ST's other asserted

interests are sufficient to establish standing to pursue the trademark cancellation claim related to the "Metalast" trademark. (*Id.*)

Pursuant to the Ninth Circuit's memorandum, the case was reopened and the Court's grant of summary judgment in favor of the *Chemeon* Defendants as to the claim for cancellation of the Metalast registration was vacated. (ECF No. 660.) The parties filed motions for summary judgment on the sole issue of whether Chemeon ST had standing to pursue a trademark cancellation claim. (ECF Nos. 663, 664, 665, 666.)

On February 3, 2023, the Court granted summary judgment in favor of the defendants, finding "Chemeon lacks standing to pursue its cancellation claim." (ECF No. 677 at 13.) Again, judgment was entered, and the case was closed. (ECF No. 678.) Chemeon ST appealed, (ECF No. 680), and the Ninth Circuit affirmed. *Chemeon Surface Tech. LLC v. Metalast Int'l, Inc.*, No. 23-15291, 2024 WL 1904538, at *2 (9th Cir. May 1, 2024).

B.   **Instant Action**

On November 19, 2018, Plaintiffs initiated suit against Defendants in the United States District Court for the Central District of California. (ECF No. 1.) On February 27, 2019, the case was transferred to the District of Nevada. (ECF No. 61.) In so doing, the California court found that the "questions of fact and law presented in both actions are identical" and therefore the "'interest of justice' *demands* transfer of this suit to a district court in Nevada . . . ." (ECF No. 61 at 3-4 (emphasis added).)

On June 13, 2024, Plaintiffs filed their second amended complaint, which became the operative complaint in this case. (ECF No. 214). The complaint identifies Chemetall and QualiChem as "Manufacturer/Distributors" and BASF, Miles, Schneider, Ronatec, Albemarle, and Southern as "Distributors." (*Id.* at 5.) Plaintiffs allege that Chemetall, QualiChem, and Southern "manufactured, advertised, labeled, sold, and distributed products identified as 'formerly Metalast'" "[w]ithout license, consent, or other authorization from the owner of the Metalast trademark." (*Id.* at ¶ 136-38.) Plaintiffs allege the remaining Defendants "advertised, labeled, sold, and distributed products

identified as 'formerly Metalast'" "[w]ithout license, consent, or other authorization from the owner of the Metalast trademark." (*Id.* at ¶ 139.) Plaintiffs assert claims for: (1) trademark infringement under federal law, (2) false designation of origin, (3) trademark dilution, (4) trademark infringement under Nevada law, (5) unfair business and trade practices, (6) unjust enrichment, and (7) declaratory relief. (*See* ECF No. 214.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A complaint challenged "by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but requires plaintiff to provide actual grounds for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Generally, a motion to dismiss pursuant to Rule 12(b)(6) tests the "legal sufficiency of the claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "view[ed] . . . in the light most favorable to the" nonmoving party. *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1087 (9th Cir. 2021). Dismissal is proper only where there is no cognizable legal theory or an "absence of sufficient facts alleged to support a cognizable legal theory." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018) (quoting *Navarro*, 250 F.3d at 732).

The Ninth Circuit has found that two principles apply when deciding whether a complaint states a claim that can survive a 12(b)(6) motion. First, to be entitled to the presumption of truth, the allegations in the complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Second, so that it is not unfair to require the defendant to be subjected to the expenses associated with discovery and continued litigation, the factual allegations of the complaint, which are taken as true, "must

*plausibly* suggest an entitlement to relief." *Id.* (emphasis added). An amended pleading supersedes the original pleading and renders it of no legal effect, unless the amended complaint incorporates by reference portions of the prior pleading. *Williams v. County of Alameda*, 26 F.Supp.3d 925, 936 (N.D. Cal. 2014); *see also Loux v. Rhay,* 375 F.2d 55, 57 (9th Cir. 1967) ("The amended complaint supersedes the original, the latter being treated thereafter as nonexistent.") (citing cases), *overruled in part by Lacey v. Maricopa County,* 693 F.3d 896, 928 (9th Cir. 2012).

### III.   DISCUSSION

#### A.   Motion to Dismiss

First, the Court must determine whether the motions to dismiss can be decided without converting either motion into a motion for summary judgment as both the Plaintiffs and Defendants attached exhibits to their briefs. "As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks and citation omitted). If either party to the motion to dismiss submits materials outside the pleadings in support of, or opposition to, the motion, the Court has discretion either to consider or reject such evidence. *See Swedberg v. Marotzke,* 339 F.3d 1139, 1143-46 (9th Cir. 2003) (where a district court does not rely on the materials submitted outside the pleadings, a motion to dismiss need not be converted into a motion for summary judgment). If a district court does consider evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003) (citing Fed. R. Civ. P. 12(b)); *see Bank Melli Iran v. Pahlavi,* 58 F.3d 1406, 1408 (9th Cir. 1995).

However, a court may consider a limited set of documents without converting a Rule 12(b)(6) motion into a motion for summary judgment: documents attached to the complaint, documents incorporated by reference in the complaint, or matters that can be judicially noticed. *Ritchie,* 342 F.3d at 908. Even if a document is not attached to a

complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim. *Id.*; *see Branch v. Tunnell,* 14 F.3d 449, 453–54 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara,* 307 F.3d 1119 (9th Cir. 2002). The doctrine of incorporation by reference may apply, for example, when a plaintiff's claim about insurance coverage is based on the contents of a coverage plan, or when a plaintiff's claim about stock fraud is based on the contents of SEC filings. *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chemical Co.*, 443 F.3d 676, 681 (9th Cir. 2006)*.* Additionally, "[a] court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment." *Lee*, 250 F.3d at 689. Pursuant to Federal Rule of Evidence 201, a court may take judicial notice of facts "not subject to reasonable dispute." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

Here, the vast majority of the attached exhibits are documents pulled from the dockets in *Chemeon* and the instant case. The Court takes judicial notice of the dockets and filings in *Chemeon* and the instant case. *See* Fed. R. Evid. 201; *Harris v. Cty. of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012) (courts "may take judicial notice of undisputed matters of public record," including filings in federal or state courts). To the extent any exhibits do not satisfy the requirements for use without converting the motions to dismiss into motions for summary judgment, the Court will not review the exhibits beyond determining whether they may be relied upon. *Swedberg,* 339 F.3d at 1143-46. Therefore, the Court will resolve this matter as a motion to dismiss without converting the motion to one for summary judgment.

### B. Claim Preclusion

In both motions to dismiss, Defendants argue that this case must be dismissed based on assertions that Plaintiff's causes of action are precluded by the doctrine of claim preclusion. "The related doctrines of claim and issue preclusion, by precluding

parties from contesting matters that they have had a full and fair opportunity to litigate, protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions." *Media Rights Technologies, Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1021 (9th Cir. 2019) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)) (cleaned up). Under the doctrine of res judicata, or the claim preclusion doctrine, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Under collateral estoppel [or the issue preclusion doctrine], once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (internal citations omitted).

Claim preclusion bars relitigation of all claims that "could have been raised in a prior action." *Holcombe v. Hosmer*, 477 F.3d 1094, 1097 (9th Cir. 2007). A plaintiff cannot avoid the bar of claim preclusion merely by alleging conduct by the defendant not alleged in the prior action, or by pleading a new legal theory. *See McClain v. Apodaca*, 793 F.2d 1031, 1034 (9th Cir. 1986). Although res judicata and collateral estoppel are affirmative defenses, a Rule 12(b)(6) motion is an appropriate motion in which to raise these defenses when the defenses raise no disputed issues of fact. *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984).

Claim preclusion is appropriate where: (1) there was a final judgment on the merits, (2) the same claim or cause of action was involved in both suits, and (3) the parties are identical or in privity. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001). The Court will first evaluate whether the three elements for claim preclusion are met and then will turn to the extent of the preclusive effect, if any.

### 1. Final Judgment on the Merits

Any dismissal, except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19, operates as a final judgment on the merits. Fed. R. Civ.

P. 41(b). Dismissal of an action with prejudice is considered a final judgment on the merits. *Headwaters Inc. v. U.S. Forest Service*, 399 F.3d 1047, 1092 (9th Cir. 2005). Defendants argue that the Court's entry of summary judgment and grant of a stipulation to voluntarily dismiss with prejudice claims for relief in the amended counterclaim in the *Chemeon* case constitutes a final judgment on the merits in this case.[2] (ECF No. 216 at 13; ECF No. 225 at 18.)

Plaintiffs argue, in a footnote, that the stipulated dismissal of a claim with prejudice only has preclusive effect in the same court. (ECF No. 226 at 12, n.7 (citing *Headwaters*, 399 F.3d at 1052, n.4 (further citations omitted).) Plaintiffs argue that because this action was initially filed in the Central District of California, and the voluntarily dismissed claims were brought in the District of Nevada, the dismissal with prejudice "could not have preclusive effect." (ECF No. 226 at 12, n.7.)

In *Headwaters*, the Ninth Circuit noted that "a stipulated dismissal 'with prejudice' under Rule 41 of the Federal Rules of Civil Procedure *may* not have res judicata effect, even for the named parties in that suit, in another court." 399 F.3d at 1052, n.4 (emphasis added). The Ninth Circuit pointed to the Supreme Court's "important distinction" in *Semtek International, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 506 (2001), that "dismissal with prejudice in federal court 'bars refiling of the same claim in' the same district court, but is only 'a necessary condition, not a sufficient one, for claim-preclusive effect in other courts.'" *Headwaters*, 399 F.3d at 1052, n.4 The Supreme Court's language makes clear that *Semtek* was not stating that a voluntary dismissal with prejudice could never be preclusive, rather, *Semtek* stands for the principle that a voluntary dismissal with prejudice *alone* is not preclusive. *See* 531 U.S. at 501–06.

Turning to the case at hand, although the suit was filed in the Central District of California, it is now pending in the same district as the voluntarily dismissed claims.

---

[2] Defendants note that on May 23, 2024, the Ninth Circuit issued its mandate affirming the District Court's judgment, resolving the final appeal of all issues associated with *Chemeon.* (ECF No. 216 at 13; ECF No. 225 at 18.)

(ECF No. 61.) In deciding to transfer the case, the court found that "[d]espite Plaintiffs' thinly-veiled attempt to construe this case as a separate dispute by not naming [Chemeon ST] as a party, the questions of fact and law presented in both actions are identical." (*Id.* at 3-4.) The court noted that "[b]esides identifying a handful of witnesses residing in California and noting that some of the Defendants are either incorporated or do business in California, Plaintiffs make a scant showing of connection between their causes of action and their preferred venue." (*Id.*) Consequently, the court determined "[t]hat the effects of that dispute now reach other jurisdictions through [Chemeon ST's] subsequent contracts with Defendants does not justify the advent of parallel litigation in a separate venue." (*Id.*) In fact, the court concluded "[i]t is clear that the 'interest of justice' *demands* transfer of this suit to a district court in Nevada . . . ." (*Id.* (emphasis added).)

Here, where the case is now pending in the same district as the stipulation to dismiss with prejudice, finding that the dismissal is not preclusive simply because Plaintiffs filed the suit in a different district would be antithetical to the "interests of justice." This interpretation would promote forum shopping as it would essentially nullify the effect of a stipulation to dismiss with prejudice in any case where jurisdiction may be proper in another federal district. As other courts within the Ninth Circuit have stated, "[r]es judicata may not be avoided on the basis of . . . an attorney's ill-considered decision to enter into an all-encompassing stipulation of withdrawal with prejudice." *Rumbo Perez v. Espinosa*, 2020 WL 2095804, at *6 (C.D. Cal Jan. 21, 2020) (quoting *Durney v. WaveCrest Labs.*, LLC, 441 F. Supp. 2d 1055, 1059 (N.D. Cal. 2005)). Thus, the Court finds that the stipulation to dismiss the counterclaims in *Chemeon* with prejudice is a final judgment on the merits for the purpose of claim preclusion. *See Headwaters*, 399 F.3d at 1052, n.4.

### 2. Identity of Claims

The Court will now evaluate whether the same claims or causes of action were involved in both *Chemeon* and the instant litigation. To determine whether the cases

involve the same claims, the Court considers the following factors:

> (1) [W]hether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Constantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982) (citation omitted).

The Ninth Circuit has recognized that whether the two suits arise out of the same transactional nucleus of facts is the most important factor. *Id.* at 1202; *see also Headwaters*, 399 F.3d at 1052; *Turtle Island Restoration Network v. U.S. Dept. of State*, 673 F.3d 914, 918 (9th Cir. 2012). Further, the Ninth Circuit has held that because the common-nucleus criterion is outcome determinative, the Court need not consider the other criteria. *Media Rights*, 922 F.3d at 1029-30 (collecting cases).

"Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *Western Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992) *(c*iting Restatement (Second) of Judgments § 24(1) (1982)); *see also Turtle Island*, 673 F.3d at 918 (citation omitted).  The Ninth Circuit has advised that:

> [i]n most cases, "the inquiry into the 'same transactional nucleus of facts' is essentially the same as whether the claim could have been brought in the first action." *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1151 (9th Cir. 2011). A plaintiff need not bring every possible claim. But where claims arise from the same factual circumstances, a plaintiff must bring all related claims together or forfeit the opportunity to bring any omitted claim in a subsequent proceeding.

*Turtle Island*, 673 F.3d at 918.

However, "[t]he fact that res judicata depends on an 'identity of claims' does not mean that an imaginative attorney [or litigant] may avoid preclusion by attaching a different legal label to an issue that has, or could have been litigated." *Tahoe Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d 1064, 1077–78 (9th Cir. 2003). "Newly articulated claims based on the same nucleus of facts may

12

still be subject to res judicata finding if the claims could have been brought in the earlier action." *Id.* at 1078. "It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought." *Id.* (citation omitted).

In *Chemeon*, the counterclaims alleged that the settlement agreement stated that the *Chemeon* Plaintiffs refused to stop using the name Metalast in violation of the settlement agreement. (*See* ECF No. 51 (*Chemeon*).) The counterclaims further asserted that Chemeon ST, "at the direction of its owners, [the Meilings], continued to use 'Metalast' to describe products marketed by [Chemeon ST]" following the 90-day period specified in the settlement. (*Id.* at ¶ 45.) Specifically, the counterclaims assert that Metalast and Semas "are entitled to specific performance of the Settlement by court decree ordering Counter Defendants to forever cease and desist from using 'Metalast' in any fashion or manner whatsoever." (*Id.* at ¶ 67.) The counterclaim sought relief in the form of:

> Entry of a preliminary injunction and permanent injunction enjoining the [*Chemeon* Plaintiffs], and each of them, and *their affiliates, agents, officers, members, employees, and other persons related to* [Chemeon Plaintiffs] from publishing or otherwise using the term "Metalast" in "any fashion or manner whatsoever," including any references on websites owned or controlled by [*Chemeon* Plaintiffs], on any product data sheets, product safety sheets, *product labeling*, or other marketing materials[.]

(*Id.* at 14 (emphasis added).)

In *Chemeon*, the issue of whether Chemeon ST was able to use the term "Metalast" was litigated both at trial and in motion practice. For example, before the case was referred to the undersigned Magistrate Judge on consent,[3] Chief District Judge Du determined at summary judgment that an issue of fact existed as to whether the way Chemeon ST and the Meilings used "formerly Metalast" after the 90-day transition period would fit within the terms of the Settlement Agreement. (ECF No. 233

---

[3] On May 13, 2019, *Chemeon* was referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 494 (*Chemeon*).)

13

(*Chemeon*).) In making findings of fact and conclusions of law, the Court was required to "determine whether the use of the word "Metalast" fit within the terms of the Settlement Agreement." (ECF No. 627 (*Chemeon*).)

Thus, the record shows that in *Chemeon*, the parties litigated whether the use of the "formerly Metalast" language by Chemeon ST <u>and its distributors</u>. (*See, e.g.*, ECF No. 214 at 1 (pleading that the Court in *Chemeon* considered claims that Chemeon ST and its distributors were legally entitled to refer to Chemeon ST the company and its products as "formerly Metalast*.*"); *see id*. at 12-13 ("The point of the [*Chemeon*] Litigation was to destroy Semas and his family in order to pressure Semas to forfeit the Metalast brand and trademark so that [Chemeon ST], Chemetall, QualiChem, [Southern], and other Distributors could continue profiting from the Metalast trademark without paying any compensation for the use of the brand."); ECF No. 627 at 30 (*Chemeon*) (discussing the *Chemeon* Defendants' counterclaim for specific performance of the settlement agreement's prohibition on the use of Metalast "in any fashion or manner whatsoever.").)

Here, the Court must accept all well-pleaded factual allegations as true and must view those factual allegations in the light most favorable to Plaintiffs. *Iqbal*, 556 U.S. at 678; *Lemmon*, 995 F.3d at 1087. In the instant complaint, Plaintiffs allege that Chemetall, QualiChem, and Southern "manufactured, advertised, labeled, sold, and distributed products identified as 'formerly Metalast'" "[w]ithout license, consent, or other authorization from the owner of the Metalast trademark." (ECF No. 214 at ¶ 136-38.) Plaintiffs allege the remaining Defendants "advertised, labeled, sold, and distributed products identified as 'formerly Metalast'" "[w]ithout license, consent, or other authorization from the owner of the Metalast trademark." (*Id.* at ¶ 139.)

The operative complaint in this case states that the Court in *Chemeon* considered claims that Chemeon ST and its distributors were legally entitled to refer to Chemeon ST the company and its products as "formerly Metalast." (ECF No. 214 at 1.) The complaint also alleges that "[t]he point of the [*Chemeon*] Litigation was to destroy

Semas and his family in order to pressure Semas to forfeit the Metalast brand and trademark so that [Chemeon ST], Chemetall, QualiChem, SIC, and other Distributors could continue profiting from the Metalast trademark without paying any compensation for the use of the brand." (*Id.* at 12-13.) Thus, by Plaintiffs' own words, *Chemeon* encompassed Chemeon ST's distributors. Plaintiffs then identify all Defendants in the instant case as distributors or manufacturer/distributors. (*Id.* at ¶ 17.) By Plaintiffs' own words, the claims from *Chemeon* overlap with the claims in the instant suit because *Chemeon* was about the ability of Chemeon ST <u>*and its distributors*</u> to use the term "formerly Metalast."

This is further supported by the District Court for the Central District of California's decision to transfer the instant case to the District of Nevada. Specifically, the court found that "[d]espite Plaintiffs' thinly-veiled attempt to construe this case as a separate dispute by not naming [Chemeon ST] as a party, the questions of fact and law presented in both actions are identical." (ECF No. 61 at 3-4.) The Central District of California specifically found that "[t]he fundamental dispute is whether Plaintiffs own and have exclusive right to use the Metalast mark, or whether [Chemeon ST]—directly or by licensing to Defendants—also enjoys use of the Metalast mark." (*Id.* at 4.) Ultimately, the court concluded "[i]t is clear that the 'interest of justice' *demands* transfer of this suit to a district court in Nevada . . . ." (*Id.* (emphasis added).)

Additionally, although the common-nucleus factor is determinative, the evidence required in both cases also weighs in favor of finding an identity of claims. In both actions, the evidence presented includes Chemeon ST or its business partners' marketing materials, technical materials, packaging, and labeling that use the language "formerly Metalast." For example, in the instant case, Plaintiffs attach to their complaint an email from a Chemetall employee to the "Chemetall team" stating that "[t]he labeling and our TDS sheets and MSDS sheets always will refer to formerly Metalast TCP-HF . . . . ." (ECF No. 214-7.) The very same email was used as evidence in *Chemeon*. (ECF No. 627 at 13 (*Chemeon*) ("Further, Chemetall USA, Inc. circulated an email stating, in

relevant part: . . . The labeling and our TDS sheets and MSDS sheets always will refer to 'formerly Metalast TCP-HF . . .'") Moreover, any evidence concerning the "famousness" of the Metalast trademark would be essentially the same. As such, the Court finds that there is an identity of claims between the claims in *Chemeon* and the instant case for purposes of claim preclusion.

### 3. Identity or Privity of Parties

Turning to the final element for claim preclusion, the parties must be identical or there must be some sort of privity between them. *Owens,* 244 F.3d at 713. The Supreme Court has identified six exceptions to the general rule that nonparty cannot be bound by preclusion: (1) "a person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of his agreement"; (2) "preexisting 'substantive legal relationships' between the person to be bound and a party to the judgment"; (3) "'in certain limited circumstances,' a nonparty may be bound by a judgment because she was 'adequately represented by someone with the same interests who was a party' to the suit"; (4) "a nonparty is bound by a judgment if she 'assumed control' over the litigation in which that judgment was rendered"; (5) "a person who did not participate in litigation later brings suit as the designated representative of a person who was a party to the prior adjudication"; and (6) "in certain circumstances a special statutory scheme may 'expressly foreclose successive litigation by nonlitigants . . . if the scheme is otherwise consistent with due process.'" *Taylor*, 553 U.S. at 893–95 (internal citations omitted).

A nonparty is adequately represented in a prior suit when, "at a minimum: (1) [t]he interests of the nonparty and her representative are aligned; and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." *Id.* at 900 (citations omitted). "In addition, adequate representation sometimes requires (3) notice of the original suit to the persons alleged to have been represented." *Id.* Moreover, a "'lesser degree of privity is required for a new defendant to benefit from claim preclusion than for a plaintiff to

bind a new defendant in a later action.'" *Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 619 (Fed. Cir. 1995) (quoting *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 966 (3d Cir. 1991)); see *Airframe Systems, Inc. v. Raytheon Co.,* 601 F.3d 9, 17 (1st Cir. 2010) ("We, along with other circuits, have long held that claim preclusion applies if the new defendant is closely related to a defendant from the original action—who was not named in the previous law suit, not merely when the two defendants are in privity.") (internal quotation marks omitted).

In *Chemeon*, the parties were Chemeon ST, the Meilings, Semas, MI-INC and MI-LLC. The instant case involves Semas, Metalast, Chemetall, BASF, QualiChem, Miles, Schneider, Ronatec, Southern, Albemarle, and intervenor Chemeon ST. As to the Plaintiffs, both Semas and Metalast were named parties in both cases and thus the identity of parties element is satisfied.[4] However, the issue is that the Defendants in this action were not specifically named as parties in *Chemeon*.

Defendants argue that although they were not specifically named as parties in *Chemeon*, they are privies with Chemeon ST, who was a named party. (ECF No. 225 at 18.) Defendants point to the Plaintiff's own language in the operative complaint stating that the *Chemeon* case "considered claims by [Chemeon ST] that [Chemeon ST] *and its distributors* were legally entitled to refer to [Chemeon ST] (the company) and its products as 'formerly Metalast.'" (ECF No. 214 at 1 (emphasis added).) Again, the Court must accept all well-pleaded factual allegations as true and must view those factual allegations in the light most favorable to Plaintiffs. *Iqbal*, 556 U.S. at 678; *Lemmon*, 995 F.3d at 1087.

The complaint in this case expressly states that "[t]he point of the [*Chemeon*] Litigation as attempting "to destroy Semas and his family in order to pressure Semas to forfeit the Metalast brand and trademark so that [Chemeon ST], Chemetall, QualiChem, SIC *and other Distributors* could continue profiting from the Metalast trademark without

---

[4]  Plaintiffs do not provide any argument to the contrary. (*See* ECF Nos. 226, 227.)

17

paying any compensation for the use of the brand." (ECF No. 214 at ¶ 64.) The complaint also identifies Chemetall and QualiChem as "Manufacturer/Distributors" and BASF, Miles, Schneider, Ronatec, Albemarle, and Southern as "Distributors." (*Id.* at ¶ 17.)

Plaintiffs argue that Defendants' motions do not contain any evidence of a partnership or indemnification agreement with Chemeon ST.[5] (ECF No. 226 at 8.) Plaintiffs argue that "[Defendants] simply manufacture and sell chemicals, and pay royalties to Chemeon ST pursuant to arm's length agreements. [Defendants] share no fiduciary relationship, ownership, management, or profits with Chemeon ST. Chemeon ST was never a successor, predecessor, class representative, or other legal representative for the [Defendants]." (*Id.*) However, Plaintiffs admit that Chemeon ST and Movants "definitely share common interests: they have all exploited the Metalast brand for profit without any legal right to do so." (*Id.* at 14.)

Plaintiffs further argue that because Defendants were not party to the settlement agreement, any claims relating to the breach of that agreement could not have preclusive effect on Defendants. (ECF No. 226 at 9.) However, as part of the evidence provided to show that the settlement was breached, the *Chemeon* Defendants provided an exhibit showing that Chemetall, who Plaintiffs identify as a Manufacturer/Distributors of Chemeon ST products, was using the term "formerly Metalast." (ECF No. 627 at 13 (*Chemeon*).) Thus, although Defendants may not have been party to the Settlement Agreement itself, the conduct of Chemeon ST's business partners is relevant to the performance of the agreement.

The parties against whom claim preclusion is being asserted were parties to the previous suit and thus their interests were adequately represented. *See Owens,* 244 F.3d at 713. In this scenario, because Defendants are trying to benefit from claim

---

[5] As the Court is evaluating this issue as a motion to dismiss, the Court may not rely on declarations or affidavits, such as the declaration from Dean Meiling provided by Plaintiffs, where the contents of such exhibits are not undisputed. (*See* ECF No. 216-17.)

18

preclusion against parties who were named in the previous action, a lesser degree of privity is required. *See Mars Inc.*, 58 F.3d at 619. Based on the record as outlined above and the lower standard required, Defendants have sufficient privity to assert claim preclusion in this litigation. The interests of the Defendants and Chemeon ST are aligned and by the Plaintiffs' own words, *Chemeon* was litigated so that Chemeon ST *and its distributors* could continue profiting from the Metalast trademark. *See Taylor*, 553 U.S. at 900. Thus, the identity of parties element has been satisfied. Based on the discussion above, the Court finds that all three elements for claim preclusion are met.

### 4. Preclusive Effect

After finding that claim preclusion is appropriate, the Court must now determine the scope of the preclusive effect. Claim preclusion bars relitigation of all claims that "could have been raised in a prior action." *Holcombe*, 477 F.3d at 1097. "[C]laim preclusion does not apply to claims that were not in existence and could not have been sued upon – *i.e.*, were not legally cognizable – when the allegedly preclusive action was initiated." *Media Rights*, 922 F.3d at 1021 (citing *Howard v. City of Coos Bay*, 871 F.3d 1032, 1040 (9th Cir. 2017)).

Plaintiffs argue that *Chemeon* could not have any preclusive effect against Chemeon ST or Defendants for claims which accrued after commencement of *Chemeon*. (ECF No. 226 at 7.) Defendants argue any counterclaims against them directly "could have been raised" in *Chemeon* at least as late as November 14, 2019, which is within 14 days after the Third Amended Complaint was filed on October 31, 2019, as directed by Fed. R. Civ. P. 15(a)(3). (ECF No. 229 at 7.) Thus, Defendants argue that any claims based on alleged conduct occurring prior to November 14, 2019, would be barred. (*Id.*) The Court agrees with this determination and finds that Plaintiffs could have raised the claims against Defendants in *Chemeon* until November 14, 2019. *See Razaghi v. Razaghi Development Co., LLC*, No. 2:18-cv-01622-GMN-DJA, 2021 WL 4486342, at *7 (D. Nev. Sept. 30, 2021) (finding claim could not have been alleged in the previous suit because it arose after the final pleading was filed in the previous

suit).

Although Plaintiffs request injunctive relief to "halt any ongoing infringement of the Metalast trademark, continuing dilution of the Metalast trademark, continuing consumer confusion or false designation of origin, or further or ongoing torts under state law," Plaintiffs do not allege with specificity any ongoing conduct in the complaint. (ECF No. 214 at 39.) Plaintiffs also do not provide a date after which they believe claims would not be precluded. In fact, none of the complaints filed in the instant case allege conduct occurring more recently than November 14, 2019. (*See* ECF Nos. 1, 16, 214.) Consequently, there is an absence of sufficient facts alleged to support any claims which are not precluded, and dismissal is therefore proper.[6] *See Davidson*, 889 F.3d at 965 (citation omitted).

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that the motion to dismiss filed by Chemetall, BASF, QualiChem, Miles, Schneider, Ronatec, and Southern, (ECF No. 216), is **GRANTED**.

**IT IS FURTHER ORDERED** that Albemarle's motions to dismiss, (ECF Nos. 218, 225), are **GRANTED**.

**IT IS FURTHER ORDERED** that this action be **CLOSED** and that judgment be entered accordingly.

**IT IS SO ORDERED**.

DATED: September 24, 2024 .

_____
**UNITED STATES MAGISTRATE JUDGE**

---

[6] As the motions to dismiss are disposed of based on claim preclusion alone, the Court declines to reach the merits of other arguments raised by the parties.