1
2
3

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

4
5
6
7
8

| DAVID M. SEMAS, *et al.*, | Case No. 3:19-CV-00125-CLB |
|---|---|
| Plaintiffs, | **ORDER GRANTING DEFENDANTS' MOTION FOR ATTORNEY FEES AND REQUEST FOR JUDICIAL NOTICE** |
| v. | |
| CHEMETALL US, INC., *et al.*, | [ECF Nos. 232, 233] |
| Defendants. | |

9    Currently pending before the Court is Defendants' Chemetall US, Inc.

10   ("Chemetall"), BASF Corp. ("BASF"), QualiChem, Inc. ("QualiChem"), Miles Chemical Co.

11   ("Miles"), John Schneider and Associates, Inc. ("Schneider"), Ronatec C2C ("Ronatec"),

12   and Southern Industrial Chemicals, Inc ("Southern") (collectively referred to as

13   "Defendants") motion for attorney fees. (ECF No. 232.) Plaintiffs David M. Semas

14   ("Semas") and Metalast, Inc. ("Metalast") (collectively referred to as "Plaintiffs")

15   responded, (ECF No. 234), and the Defendants replied, (ECF No. 240).[1] The Court

16
17
18
19

---

[1]    Defendants request the Court take judicial notice of the Exhibits 3-12 of their motion for attorney fees. (ECF No. 233.) These exhibits contain three orders granting attorney fee awards from other cases involving the parties (ECF Nos. 232-3; 232-4; 232-5), and filings from *Chemeon* such as a renewal for trademark registration (ECF No. 232-6), a letter from Ian Burns to Semas regarding trademark renewal (ECF No. 232-7), a petition for trademark cancellation (ECF No. 233-8), deposition excerpts (ECF Nos. 232-9; 232-10; 232-11), and a declaration (ECF No. 232-12.) Defendants request for judicial notice is unopposed.

20
21
22
23

A court may take judicial notice of a fact that is generally known and which is not subject to dispute, and deemed authentic. *See* Fed. R. Evid. 201. Exhibits three, four, and five are court orders regarding attorney fees involving the parties and the Court is permitted to take judicial notice of these documents. *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo*, 971 F.2d 244, 248 (9th Cir.1992) ("[W]e 'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'").

24
25
26
27
28

However, exhibits six through twelve focus on alleged fraudulent renewal of patents by Semes and have nothing to do with the resolution of Defendants' motion for attorney fees. (*See* ECF Nos. 232-6; 232-7; 232-8; 232-9; 232-10; 232-11; 232-12.) As Defendants state, these exhibits are "for purposes of adjudicating Defendants' accompanying Motion to Dismiss." (ECF No. 232 at 3.) The Court need not take notice of documents that do not provide any additional relevant information, even if they would otherwise be the proper subject of judicial notice. *See Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1410 n.2 (9th Cir. 1990) (declining to take judicial notice of another action "not relevant" to the case). Because these exhibits do not go to the ultimate question of granting attorney fees *in this case*, the Court denies Defendants' request for judicial notice as to exhibits six through twelve.

1   ordered Defendants to amend their billing entries due to the significant redactions in the

2   entry explanations. (ECF No. 242.) Defendants submitted amended billing entries, (ECF

3   No. 245), and Plaintiffs responded to the amended entries, (ECF No. 246.)

4        Defendants' motion comes upon the conclusion of nearly seven years of litigation,

5   and over a decade in related cases, which resulted in the Plaintiffs' claims in this case

6   being dismissed under the doctrine of claim preclusion. (ECF No. 230.) For the reasons

7   stated below, the Court grants Defendants' motion for attorney fees, awards Defendants

8   $244,234.09, and finds Marc Youssef Lazo ("Lazo") jointly and severally liable with

9   Plaintiffs for the entire attorney fees award.

10  **I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

11       The determination of this motion requires the Court to review and examine the

12  lengthy history of litigation between the parties. The Court will discuss the relevant

13  backgrounds of the instant case and *Chemeon Surface Tech., LLC v. Metalast Int'l, Inc.*,

14  No. 3:15-CV-00294-CLB, (D. Nev. June 3, 2015) (*Chemeon*).

15       **A.      *Chemeon*[2]**

16       The dispute in *Chemeon* arose from the breakup of a business and a disagreement

17  over the terms of a subsequent settlement agreement entered into between Chemeon

18  Surface Technology, LLC's ("Chemeon ST"), and Dean Meiling  and Madylon Meiling

19  (collectively referred to as "*Chemeon* Plaintiffs"), and David M. Semas ("Semas"),

20  Metalast International, Inc. ("MI-INC"), and Metalast International, LLC ("MI-LLC")

21  (collectively referred to as "*Chemeon* Defendants"). (ECF No. 627 at 1.) This Court has

22  frequently characterized the case as having a "long and difficult history spanning over

23  many years, several lawsuits, and various courts." (ECF No. 677 at 1.)

24       That case started when Metalast initiated an adversary proceeding in Semas's

25  bankruptcy case asserting ownership of the Metalast trademark on July 14, 2014. (ECF

26  No. 313 at 3.) Bankruptcy Judge Gregg W. Zive mediated a settlement of the dispute on

27

28  [2]      Unless otherwise noted, citations to the record in this section are to the docket in *Chemeon*.

January 27, 2015. (ECF No. 314-14 at 14.) Ultimately, the parties reached a settlement agreement. (ECF No. 627 at 7.) On March 11, 2015, the Bankruptcy Court entered its order approving the settlement agreement and all claims arising prior to that date were expressly released by the parties. (*Id.* at 10.) The settlement agreement included a provision which prohibited use of the term "Metalast" by the *Chemeon* Plaintiffs after June 15, 2015. (*Id.* at 23.)

Chemeon ST filed suit on June 3, 2015, seeking relief for: (1) misappropriation of trade secrets under NRS 600A.030; (2) declaratory judgment of no trademark infringement; (3) cancellation of the logo trademarks; (4) common law trademark infringement; (5) copyright infringement; (6) intentional interference with prospective economic advantage; (7) unfair competition under 15 U.S.C. § 1125(a); (8) statutory deceptive trade practices/consumer fraud; and (9) unjust enrichment. (ECF No. 1.) On September 3, 2015, the *Chemeon* Defendants filed counterclaims against the *Chemeon* Plaintiffs, seeking relief for: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing (i.e., "bad faith"); (3) trademark dilution; (4) trademark infringement; (5) trademark infringement and unfair competition under state law; (6) trademark dilution under state law; and (7) specific performance of settlement. (ECF No. 51.)

On November 1, 2016, the Court granted a stipulation to voluntarily dismiss – with prejudice – claims for relief in the amended counterclaim. (ECF No. 199.) The counterclaims for trademark dilution, trademark infringement, trademark infringement and unfair competition under state law, and trademark dilution under state law were therefore dismissed with prejudice. (*Id.*) The dismissed counterclaims alleged that *Chemeon* Plaintiffs impermissibly used "Metalast" to describe products marketed by Chemeon ST and therefore diluted and detracted from the Metalast trademark and created likely confusion and mistake "to deceive consumers as to the source or origin" of Metalast. (ECF No. 51 at 10-13.) On October 31, 2019, Chemeon ST filed its Third Amended Complaint, which became the operative complaint. (ECF No. 535.)

Following extensive pretrial motion practice, the Court held a bench trial on the

remaining claims and counterclaims in November of 2020. (ECF Nos. 600; 603; 605; 606; 608.) Chemeon ST's claims that proceeded to trial were: (1) declaratory judgment, (2) common law trademark infringement, and (3) copyright infringement. (ECF No. 627 at 2.) The counterclaims that proceeded to trial were for: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, and (3) specific performance of the settlement agreement. (*Id.*) Critically, the issues presented at trial by the counterclaims included whether the settlement agreement was breached by Chemeon ST's use of the term "formerly Metalast" and whether future use of the "formerly Metalast" name was prohibited. (*Id.*)

Following the bench trial, the Court entered findings of facts and conclusions of law. (ECF No. 627.) Judgment was entered pursuant to that order and the case was closed. (ECF No. 629.) As to whether the future use of the phrase "formerly Metalast" was prohibited, the Court concluded that Chemeon ST and the Meilings utilized the term "Metalast" on product labels, technical data sheets, safety sheets, business correspondence and documents and in a variety of other means in commerce in direct contravention to the ban provision after June 15, 2015. (ECF No. 627 at 23.) Consequently, the Court found that the way Chemeon ST utilized the term "formerly Metalast" or "formerly known as Metalast" as evidenced at the trial, breached the terms of the settlement agreement. (*Id.*) The *Chemeon* Plaintiffs were ordered to perform the settlement by halting all use of "Metalast" on any product labels, advertisements, sales orders, invoices, purchase orders, technical data sheets, safety data sheets, web pages, brochures, or other documents of commerce. (*Id.* at 42.)

Subsequently, the *Chemeon* Plaintiffs appealed the findings of fact and conclusions of law. (ECF No. 648.) On June 2, 2022, the Ninth Circuit affirmed in part and vacated and remanded in part the Court's findings of facts and conclusions of law. (ECF No. 657.) Specifically, the Ninth Circuit: (1) affirmed the Court's judgment in favor of the *Chemeon* Defendants' breach of contract counterclaim; (2) found the Court did not err in excluding Chemeon ST's trademark affirmative defense evidence and in excluding an

Occupational Safety and Health Administration litigation brief; (3) affirmed the Court's judgment denying Chemeon ST's trademark infringement claims; (4) found the Court did not abuse its discretion in denying Chemeon ST's claim for attorney fees under the Lanham Act; and (5) found the Court erred when it granted summary judgment dismissing Chemeon ST's claim for trademark cancellation based solely on the fact that Chemeon did not have an interest in its "own mark." (*Id.*) On remand, the Ninth Circuit directed the Court to determine whether Chemeon ST's other asserted interests are sufficient to establish standing to pursue the trademark cancellation claim related to the "Metalast" trademark. (*Id.*)

Pursuant to the Ninth Circuit's memorandum, the case was reopened and the Court's grant of summary judgment in favor of the *Chemeon* Defendants as to the claim for cancellation of the Metalast registration was vacated. (ECF No. 660.) The parties filed motions for summary judgment on the sole issue of whether Chemeon ST had standing to pursue a trademark cancellation claim. (ECF Nos. 663, 664, 665, 666.)

On February 3, 2023, the Court granted summary judgment in favor of the *Chemeon* Defendants, finding "Chemeon lacks standing to pursue its cancellation claim." (ECF No. 677 at 13.) Again, judgment was entered, and the case was closed. (ECF No. 678.) Chemeon ST appealed, (ECF No. 680), and the Ninth Circuit affirmed. *Chemeon Surface Tech. LLC v. Metalast Int'l, Inc*., No. 23-15291, 2024 WL 1904538, at *2 (9th Cir. May 1, 2024).

**B.    Instant Action**

On November 19, 2018, Mr. Lazo, on behalf of the *Chemeon* Defendants initiated suit as Plaintiffs in the United States District Court for the Central District of California. (ECF No. 1.) Notably, Chemeon ST and the Meilings were not listed as Defendants. (*Id.*) Rather, Plaintiffs named Chemeon ST's "key trading partners," including distributors and sellers of Chemeon products, as Defendants in this action. (ECF No. 40.) In their Complaint, Plaintiffs left a note to Mr. Lazo stating that the action "could really shake the tree." (*Id.* at 2.) Plaintiffs amended their Complaint on December 18, 2018, and alleged

claims of (1) trademark infringement under federal law, (2) false designation of origin, (3) trademark dilution, (4) unfair business and trade practices under California law, (5) unjust enrichment, and (6) declaratory relief. (ECF No. 13.)

On January 11, 2019, Chemeon ST moved to intervene, and Defendants moved to dismiss the case, or in the alternative, to transfer the case to the District of Nevada. (ECF Nos. 21; 22; 23.)

On February 27, 2019, Judge Josephine Staton of the Central District of California granted Defendants' motion to transfer the case to the District of Nevada. (ECF No. 61.) In so doing, Judge Staton found the suit to be "largely duplicative of [*Chemeon*]" because the "questions of fact and law presented in both actions are identical" and therefore the "'interest of justice' *demands* transfer of this suit to a district court in Nevada." (ECF No. 61 at 3-4 (emphasis added).) She further stated that this suit was a "thinly-veiled attempt to construe this case as a separate dispute by not naming [Chemeon ST] as a party." (*Id.*)

On March 1, 2019, the case was docketed at the District of Nevada. (ECF No. 62.) On June 6, 2019, the Court stayed the case pending the outcome of *Chemeon*. (ECF No. 146.) On June 30, 2022, Plaintiffs' counsel Mr. Lazo withdrew from the case. (ECF No. 185.) Following the conclusion of *Chemeon,* on June 11, 2024, the Court grant the parties request to lift the stay. (ECF No. 212.)

On June 13, 2024, Plaintiffs filed their second amended complaint, which became the operative complaint in this case. (ECF No. 214). The complaint identified Chemetall and QualiChem as "Manufacturer/Distributors" and BASF, Miles, Schneider, Ronatec, Albemarle, and Southern as "Distributors." (*Id.* at 64.) Plaintiffs alleged that Chemetall, QualiChem, and Southern "manufactured, advertised, labeled, sold, and distributed products identified as 'formerly Metalast'" "[w]ithout license, consent, or other authorization from the owner of the Metalast trademark." (*Id.* at ¶ 136-38.) Plaintiffs alleged the remaining Defendants "advertised, labeled, sold, and distributed products identified as 'formerly Metalast'" "[w]ithout license, consent, or other authorization from the owner of the Metalast trademark." (*Id.* at ¶ 139.) Plaintiffs asserted claims for: (1)

trademark infringement under federal law, (2) false designation of origin, (3) trademark dilution, (4) trademark infringement under Nevada law, (5) unfair business and trade practices, (6) unjust enrichment, and (7) declaratory relief. (*See* ECF No. 214.)

Defendants filed motions to dismiss, contending that the instant litigation was claim precluded based on the resolution of *Chemeon*. On September 24, 2024, the Court granted Defendants' motions to dismiss pursuant to the doctrine of claim preclusion. (ECF No. 230.) In *Chemeon*, the *Chemeon* Defendants' filed counterclaims against the *Chemeon* Plaintiffs. (*Id.* at 3.) Later in *Chemeon*, the Court granted a stipulation to voluntary dismiss **with prejudice** the counterclaims. (*Id.*) In granting dismissal, the Court found Plaintiffs' claims in the case were barred from re-litigation under claim preclusion because the stipulation to dismiss **with prejudice** is a final judgment on the merits, the claims in this case were the same as the counterclaims brought by the *Chemeon* Defendants in *Chemeon* or were otherwise litigated through the conclusion of *Chemeon*, and the parties in this suit were identical as those in *Chemeon*. (*Id.* at 8-20.) The Court also maintained Judge Staton's findings that the present case was duplicative of *Chemeon*. (*Id.* at 15.) The Court concluded that "[b]y Plaintiffs' own words, the claims from *Chemeon* overlap with the claims in the instant suit because *Chemeon* was about the ability of Chemeon ST *and its distributors* to use the term 'formerly Metalast.'" (*Id.* (emphasis in original).)

On October 8, 2024, Defendants moved for attorney fees under the Lanham Act and NRS 18.010(2)(b). (ECF No. 232.) From their most recent filing, Defendants request fees of $636,828.53 for 1404.6 hours of work incurred related to this case. (ECF No. 245.) Defendants also seek to hold Mr. Lazo jointly and severally liable for all fees incurred through June 30, 2022 "for his vexatious and unreasonable litigation tactics." (ECF No. 232 at 22-25.) Plaintiffs oppose the motion. (ECF No. 234.)

///

///

///

7

## II.    DISCUSSION

Defendants are the prevailing party as the Court granted their motion to dismiss with prejudice against Plaintiffs. Defendants now seek attorney fees for the defending the case. The Court first explains its conclusion that Defendants are entitled to attorney fees, then Court explains the determination of reasonable fees, and then explains why Mr. Lazo is found jointly and severally liable for the entire award of fees.

### A.    Entitlement to Fees

#### 1.    Exceptional Case Under the Lanham Act

The Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *SunEarth, Inc. v. SunEarth Solar Power Co.*, 839 F.3d 1179, 1180 (9th Cir. 2016) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). There is no "precise rule or formula for making these determinations," but "district courts analyzing a request for fees under the Lanham Act should examine the 'totality of the circumstances' to determine if the case was exceptional." *Id.* at 1181 (citing *Octane Fitness*, 572 U.S. at 554).

The Court must weigh several factors, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* (citing *Octane Fitness*, 572 U.S. at 554 n.6). "The party moving for fees has the burden of showing exceptional circumstances by a preponderance of the evidence." *ProDox, LLC v. Pro. Document Servs., Inc.*, No. 2:20-CV-02035-JAD-NJK, 2024 WL 3859700, at *4 (D. Nev. Aug. 16, 2024) (citing *SunEarth, Inc.*, 839 F.3d at 1181). However, the "Court does not award [attorney] fees lightly." *Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc.*, 619 F. Supp. 3d 970, 975 (N.D. Cal. July 28, 2021) (noting that the "case should never have been brought"). At least four circuits have

held that District Courts have the discretion to award fees "whenever there is proof of bad faith, vexatiousness, wanton actions, or forum shopping . . . ." *Moskowitz v. Am. Sav. Bank, F.S.B.*, 37 F.4th 538, 544 (9th Cir. 2022).

Here, Defendants are the prevailing party as the Court granted Defendants' motion to dismiss against Plaintiffs on all claims under the doctrine of claim preclusion. (ECF No. 230.) Plaintiffs do not contest that Defendants are the prevailing party, even though they label the Court's Order dismissing their claims as "legally wrong." (ECF No. 234 at 2.) Instead, they argue this case is not "exceptional." (ECF No. 234 at 4.)

Defendants argue this case is exceptional because Plaintiffs' litigating position stood out and the case was litigated in an unreasonable manner. (ECF No. 232 at 14.) Defendants assert that Plaintiffs brought this suit for the purposes of harassing the Defendants, pointing to Plaintiffs' statement that the case "could really *shake the tree*." (ECF No 232 at 12 (quoting ECF No. 1 at 2) (emphasis added).) Defendants also argue Plaintiffs engaged in unreasonable and improper forum shopping by bringing the case in the Central District of California rather than in the District of Nevada where *Chemeon* was already proceeding. (*Id.*) Defendants cite to Judge Staton's order transferring the case to this Court where she found that this case is "'largely duplicative of [*Chemeon*],'" because the "'questions of fact and law presented in both actions are identical'" and concluded that this case as filed in the Central District of California was a "'thinly-veiled attempt to construe this case as a separate dispute by not naming [Chemeon] as a party.'" (*Id.* at 13 (quoting ECF No. 61).) Defendants further argue that the Court found the claims raised by the Plaintiffs to be precluded and any argument now raised by Plaintiffs to the contrary as "frivolous" and "objectively unreasonable." (*Id.*) Defendants also cite specifically to Mr. Lazo's litigation conduct as he has brought five cases against the Defendants with the goal of seeking a "second bite at the apple" and harassing Defendants, Chemeon ST, and their business partners. (*Id.* at 13-14.)

Plaintiffs argue this case is not exceptional. (ECF No. 234 at 5.) In their view, filing this action in the Central District of California was not only reasonable but independently

proper. (*Id.* at 5-7.) They further argue that raising the claims against Defendants, and excluding Chemeon ST, was reasonable and assert that prior decisions made by this Court were "legally wrong" or "close question[s]." (*Id.* at 2.) Plaintiffs raise significant arguments to rehash the Court's order dismissing the claims under claim preclusion. (*Id.* at 4-14.) Plaintiffs also argue they did not litigate the case unreasonably but instead Defendants prolonged the case by seeking transfer and stay the case pending appeal. (*Id.* at 14.)

"[F]iling in an improper forum [may] evidence[] bad faith." *In re Hall, Bayoutree Assocs., Ltd.*, 939 F.2d 802, 806 (9th Cir. 1991). "[A] plaintiff may not file suit in one district to circumvent or challenge adverse rulings in another district." *Lasko v. Am. Bd. of Surgery*, 47 F. Supp. 3d 1122, 1132 (D. Nev. Sept. 19, 2014), *order vacated in part on reconsideration sub nom. Lasko v. Am. Bd. of Internal Med.*, 92 F. Supp. 3d 1013 (D. Nev. Mar. 19, 2015) (citing *King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992)). A plaintiff cannot "purposefully [seek] to avoid" the proper venue "through blatant forum shopping." *Wood v. Santa Barbara Ch. of Comm, Inc.*, 705 F.2d 1515, 1523 (9th Cir. 1983). Filing suit in one court after "losing at least on some similar claims in" another "smacks of harassment and bad faith on the plaintiff's part . . . ." *King*, 963 F.2d at 1304; *see also Rupert v. Bond*, No. 12-CV-05292-LHK, 2013 WL 5272462, at *18 (N.D. Cal. Sept. 17, 2013) (noting a suggestion of "bad faith" by the Plaintiff for bringing the action after losing on similar claims in Oregon and California); *Paul v. EYP, Ltd.*, No. CV 09-8560 DSF (SHX), 2010 WL 11596675, at *2 (C.D. Cal. June 3, 2010) ("filing in [a] district [that] was obviously improperly . . . raises concerns about whether action as filed in bad faith or the purpose of harassment"); *Maydak v. GTE Corp.*, No. C-98-0737-MJJ, 1999 WL 252650, at *6 (N.D. Cal. Apr. 22, 1999), *aff'd*, 4 F. App'x 456 (9th Cir. 2001) (finding "harassment and bad faith" because the Plaintiff "already had the benefit of the District of Oregon's judgment on the causes of action he pleads, and his filing in [the Northern District of California] is in direct contravention of [another] Court's ruling").

The Court finds this case as an exceptional case warranting the award of attorney's

fees for Defendants. Plaintiffs filed this action in the Central District of California after *Chemeon* was already pending in front of this Court. Rather than seeking to amend their complaint in *Chemeon* and avoid the costs of duplicative litigation, Plaintiffs initiated this suit in another District in another state in order to obtain a second bite at the apple. At a minimum, Plaintiffs should have filed their suit in this Court and sought to consolidate with *Chemeon* or pursued counterclaims in *Chemeon*. As the Court found in its September 24, 2024 Order, "Plaintiffs could have raised the claims against Defendants in *Chemeon* until November 14, 2019." (ECF No. 230 at 19.) This case was filed in the Central District of California on November 19, 2018, about one year before the deadline to amend in *Chemeon*. (ECF No. 1.)

Plaintiffs attempt to bring a second suit of identical claims in another jurisdiction while these claims were pending this Court was a blatant attempt to forum shop in bad faith. *See R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 981 (9th Cir. 2011) (quoting *Black's Law Dictionary* 726 (9th ed. 2009)) ("Forum shopping refers to '[t]he practice of choosing the most favorable jurisdiction or court in which a claim might be heard.'"); *Nakash v. Marciano*, 882 F.2d 1411, 1417 (9th Cir. 1989) (affirming the District Court's finding of attempted forum shopping where "after three and one-half years, [Plaintiff] has become dissatisfied with the state court and now seeks a new forum for their claims. We have no interest in encouraging this practice.").

Even if there were legitimate questions as to whether the claims in this suit were precluded, the parties' significant history of litigating like claims with one another before the District of Nevada makes clear that filing the present suit outside of Nevada was motivated by avoiding the realities of pending and settled claims in Nevada. *See San Diego Comic Convention v. Dan Farr Prods.*, 807 F. App'x 674, 676 (9th Cir. 2020) (affirming the District Court's finding of an exceptional case under the Lanham Act because of the "Defendants' failure to comply with court rules, persistent desire to re-litigate issues already decided, advocacy that veered into "gamesmanship," and unreasonable responses to the litigation"). In *Kohn L. Grp., Inc. v. Auto Parts Mfg.*

*Mississippi, Inc.*, the Ninth Circuit stated:

> In *Alltrade, Inc.*, we affirmed a district court's decision not to hear a second-filed case under the first-to-file rule even though the first-filed case contained a defendant not named in the second case. A contrary holding could allow a party such as Kohn Law to skirt the first-to-file rule merely by omitting one party from a second lawsuit. We conclude that the omission of King Construction from the present action does not defeat application of the first-to-file rule. Our conclusion avoids awarding such gamesmanship and is consistent with the policy of the first-to-file rule, which is to maximize judicial economy, consistency, and comity.

787 F.3d 1237, 1240 (9th Cir. 2015) (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 624, 624 n.3, 629 (9th Cir.1991)). As Judge Staton found in her decision to transfer the case from the Central District of California to this Court, the *Chemeon* case before the District of Nevada and this suit as filed in the Central District of California presented "identical" "questions of fact and law" "[d]espite Plaintiffs' thinly-veiled attempt to construe the case as a separate dispute by not naming [Chemeon ST] as a party." (ECF No. 61 at 3-4.) Requiring Defendants to participate in identical litigation in a separate district was bad faith gamesmanship in violation of clear Ninth Circuit precedent and led to the wasteful of resources in order to seek dismissal and transfer and intervention by Chemeon and by the Courts to resolve these motions.

Furthermore, this is not the only time Mr. Lazo tried to file identical claims of a pending suit before the District of Nevada in another jurisdiction. In *Baker v. Meiling*, Mr. Lazo filed "basically the same case three times after having essentially the same case dismissed twice" in the District of Nevada and then filed it in "California state court[,] . . . [and] resisted transfer to this Court." *Baker v. Meiling*, No. 3:20-CV-00518-MMD-CLB, 2022 WL 1059476, at *7 (D. Nev. Feb. 24, 2022), *aff'd*, No. 22-15503, 2023 WL 8643233 (9th Cir. Dec. 14, 2023). The Court in *Baker* inferred "he was trying to avoid this Court's unfavorable precedents" and noted that Judge Staton found Mr. Lazo "engaged in 'blatant forum shopping.'" *Id.* at *2 (quoting *Baker v. Meiling*, No. 2:20-CV-4335-JLS-KES, 2020 WL 6743585, at *5 (C.D. Cal. Sept. 11, 2020)). "[A] federal judge does not lightly find that a plaintiff is engaged in forum shopping." *Id.* at *6.

Filing a second, parallel suit in the Central District of California was a clear attempt at a "second bite of the apple" through "blatant forum shopping." *Id.*; *see Evans v. Heimann*, No. C18-5473-BHS, 2019 WL 972715, at *4 (W.D. Wash. Feb. 28, 2019) (Where "there are parallel proceedings, and [Plaintiff] is intentionally engaging in expensive, time-consuming piecemeal litigation[,] . . . [t]his second case is a form of forum shopping (or is an attempt at a second bite at the apple).")

It is also clear that Mr. Lazo not only engaged in blatant forum shopping by filing an identical suit in another jurisdiction, but his conduct was below the level of professionalism the Court expects of attorneys during ongoing litigation. Just as the Court in *Baker v. Meiling* observed, there are instances in this case of alleged misconduct by Mr. Lazo that cannot be ignored such as "screaming" at and insulting opposing counsel and co-counsel, bad faith refusal to meet and confer with Defendants, failing to apprise oneself of the local rules and relevant precedent, and continued attempts to forum shop in bad faith and waste judicial resources. (*See* ECF Nos. 234 at 21; 245-2); *see also Baker v. Meiling*, No. 3:20-CV-00518-MMD-CLB, 2022 WL 1059476, at *7 (D. Nev. Feb. 24, 2022), *aff'd*, No. 22-15503, 2023 WL 8643233 (9th Cir. Dec. 14, 2023). Such conduct was unreasonable and weighs into the Court's finding of exceptional circumstances.

Thus, the Court finds Plaintiffs' blatant attempt to forum shop was frivolous, unreasonable, in bad faith, and with the goal to harass Defendants. Considering Mr. Lazo's history and conduct, filing the case in the Central District of California while nearly identical and parallel litigation was pending before the District of Nevada, was exceptional under the Lanham Act.

However, the Court limits it's finding of exceptionality. The Court finds that once the case was transferred to the District of Nevada, the case was no longer frivolous, unreasonable, or otherwise exceptional under the Lanham Act. While the Court eventually determined the claims of this suit were precluded by *Chemeon*, such was not known at the time this suit was transferred to the District of Nevada. Litigation that results in claim preclusion is not *per se* bad faith or frivolous. *See Henry v. Castle Med. Ctr.*, No. CV 18-

00500 JAO-WRP, 2022 WL 3539514, at *1 (D. Haw. Aug. 18, 2022) (declining to award attorney fees where the case was dismissed for claim preclusion because circumstances were not "exceptional" such that the plaintiff's claims were "frivolous, unreasonable, or groundless"); *Adaptix, Inc. v. Apple, Inc.*, No. 5:13-CV-01776-PSG, 2015 WL 5158716, at *4 (N.D. Cal. Sept. 2, 2015) (finding that the suit was not exceptional under the Lanham Act even though the case was eventually dismissed under the doctrine of claim preclusion); *Gleason v. Gilmour*, No. 08-CV-552-BR, 2011 WL 1458012, at *3 (D. Or. Apr. 12, 2011) (declining to award attorney fees where the case was dismissed for claim preclusion because circumstances were not "frivolous, unreasonable, or without foundation"); *see also In re Brooks-Hamilton*, 271 F. App'x 654, 656 (9th Cir. 2008) (concluding that "it was not frivolous . . . to attempt to plead the claim" that the Bankruptcy Court found to be barred by *res judicata* and holding that the "bankruptcy court's imposition of sanctions . . . was an abuse of discretion because it was based on it's conclusion that the claims were barred by issue and claim preclusion").

Because claim preclusion was not a foregone conclusion when this case was transferred to the District of Nevada, the Court limits its finding of exceptionality to the period between the inception of this case and when the case was transferred. Relevant actions by the party to progress and litigate the merits of this case following the transfer to this Court were not frivolous, unreasonable, or otherwise in bad faith to be considered exceptional under the Lanham Act.

In sum, the Court finds that filing this suit in the Central District of California was a blatant attempt to forum shop in bad faith and Mr. Lazo's conduct was so unreasonable such that this case is exceptional under the Lanham Act. However, the Court does not find that defending this suit once the case was transferred to the District of Nevada, even though the claims were eventually dismissed under the doctrine of claim preclusion, to be exceptional. Thus, the Court limits its finding of exceptionality of the period in which this case was litigated before it reached the District of Nevada.

///

**2.    Attorney Fees Pursuant to NRS 18.010(2)(b)**

"In diversity actions, federal courts are required to follow state law in determining whether to allow attorneys' fees." *Swallow Ranches, Inc. v. Bidart*, 525 F.2d 995, 999 (9th Cir. 1975). Under Nevada law, a prevailing party cannot recover attorney's fees unless authorized by statute, rule, or agreement between the parties. *First Interstate Bank of Nevada v. Green*, 694 P.2d 496, 498 (Nev. 1985). A party can obtain an award of attorney's fees if "the court finds that the claim, counterclaim, cross-claim or third-party complaint or defense of the opposing party was brought or maintained without reasonable ground or to harass the prevailing party." NRS 18.010(2)(b). "The court shall liberally construe the provisions of [NRS 18.010(2)(b)] in favor of awarding attorney's fees in all appropriate situations," and "[i]t is the intent of the Legislature that the court award attorney's fees pursuant to [NRS 18.010(2)(b)] ... in all appropriate situations to punish for and deter frivolous or vexatious claims and defenses." *Id.* The award of attorney fees under NRS 18.010(2)(b) is "within the sound discretion of the district court." *Kahn v. Morse & Mowbray*, 117 P.3d 227, 238 (Nev. 2005).

Based on the Court's review of the relevant Nevada and Federal laws, nearly identical standards are used to determine if attorney fees should be awarded under NRS 18.010(2)(b) and the Lanham Act. Like the Lanham Act's exceptional circumstances requirement, the Court has the discretion to award fees under NRS 18.010(20(b) "if the complaint was brought without reasonable grounds or to harass the other party." *Semenza v. Caughlin Crafted Homes*, 901 P.2d 684, 687 (Nev. 1995) (quoting *Chowdhry v. NLVH, Inc.*, 851 P.2d 459, 464 (Nev. 1993)). The reasonableness of the plaintiff's claims "depends on the actual circumstances of the case." *Bergmann v. Boyce*, 856 P.2d 560 (Nev. 1993), *superseded by statute on other grounds as stated in In re DISH Network Derivative Litig.*, 401 P.3d 1081, 1093 n.6 (Nev. 2017). If "the record reveals that counsel or any party has brought, maintained, or defended an action in bad faith, the rationale for awarding attorney fees [under NRS 18.010(2)(b)] is even stronger. . . . [Bad faith] may include conduct aimed at unwarranted delay or disrespectful of truth and accuracy."

*Allianz Ins. Co. v. Gagnon*, 860 P.2d 720, 724 (Nev. 1993) (per curiam) (quoting *Western United Realty, Inc. v. Isaacs*, 679 P.2d 1063, 1069 (Colo. 1984)).

As stated above, Defendants have met their burden to show that the present case is exceptional under the Lanham Act. Plaintiffs acted in bad faith by engaging in blatant forum shopping and using tactics that were designed to avoid the realities of pending litigation and harass the Defendants. Considering the identical requirements of exceptional circumstances under the Lanham Act and NRS 18.010(2)(b), the Court finds Defendants are also entitled to reasonable attorney fees under NRS 18.010(2)(b) based on the same time periods described above.

**B.    Determination of Reasonable Attorney Fees**

Having determined that fees should be awarded, the Court must now consider the reasonable amount of fees to be awarded. The lodestar method is the customary method that the Court uses when determining attorneys' fees. *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Id.*; *see also McGrath v. Cnty. of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995). The requesting party "has the burden of submitting billing records to establish that the number of hours it has requested are reasonable." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). The Court should exclude from the lodestar calculation hours that were not "reasonably expended," including hours that are "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see also Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006). If the Court determines some requested fees should be excluded as unreasonable, the Court may exclude bill entries pursuant to an hour-by-hour analysis. *See Gonzalez*, 729 F.3d at 1203. "The number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).

The lodestar amount is a presumptively reasonable fee. *Camacho v. Bridgeport*

*Financial, Inc.*, 523 F.3d 973, 982 (9th Cir. 2008). Although presumptively reasonable, the Court may adjust the lodestar amount based on the *Kerr* factors to account for factors that have not been subsumed in the lodestar calculation. *Id.* The *Kerr* factors include: (1) the time and labor required, (2) the novelty and the difficulty of the questions involved, (3) the skill required to perform the legal service properly, (4) the preclusion of other employment by the attorney due to the acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorney, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and, (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 525 F.2d 67, 70 (9th Cir. 1975). Furthermore, Local Rule 54-14(b) requires a party seeking attorneys' fees to include: (1) a reasonable itemization and description of the work performed and (2) an itemization of all costs sought to be charged as part of the fee award.

Based on the Court's finding of exceptional circumstances, the award of attorneys fees will be based on reasonable fees incurred from the inception of the case, November 19, 2018, to the day the case was transferred to the District of Nevada, March 1, 2019.

### 1.    Reasonable Hourly Rate

"The 'prevailing market rates in the relevant legal community' set the reasonable hourly rate for purposes of computing the lodestar amount." *Gonzalez*, 729 F.3d at 1205. The Court should 'take into consideration the experience, skill, and reputation of the attorney or paralegal.'" *Id.* (internal quotation marks omitted). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010) (internal quotation marks omitted).

It is customary for attorneys to bill an hourly rate for legal services provided. Based on the Court's review of the amended billing records, three partners, two associates, and one paralegal billed for work between November 19, 2018, and March 1, 2019. (ECF No.

245-2.) Robert Ryan attests that he is a partner at Holland & Hart and his hourly rate at the time this case began was $560.00 per hour. (ECF No. 232-1 at 3-4.) Mr. Ryan attests he has nearly forty-seven years of legal in complex civil litigation including intellectual property, commercial and corporate liability, and antitrust litigation. (*Id.*) Timothy Lukas and Teague Donahey are also partners within Holland & Hart's Intellectual Property and Commercial Litigation practices group. (*Id.* at 4-5.) Mr. Ryan attests Mr. Lukas is in the firm's Commercial Litigation and Appellate practice group, with thirty-three years of experience in complex commercial litigation. (*Id.* at 4.) Mr. Ryan also attests Mr. Donahey is in the firm's Intellection Property practice group, with twenty-seven years of experience in "high-stakes intellectual property matters and other complex business disputes . . . ." (*Id.* at 5.)

Hourly rates of $550 to $750 have been found reasonable for attorneys with 38 or more years of experience. *See Flynn v. Love*, No. 3:19-cv-00239-MMD-CLB, 2023 WL 3080494, at *3 (D. Nev. Apr. 25, 2023) ($650 rate for attorney with some 50 years of experience); *Flynn v. Love*, 3:19-cv-00239-MMD-CLB, 2022 WL 2918989, at *3 (D. Nev. July 25, 2022) ($550 for attorney with 40 years of experience); *Winecup Gamble, Inc. v. Gordon Ranch*, LP, No. 3:17-cv-00163-RCJ-WGC, 2021 WL 434201 (D. Nev. February 8, 2021) ($641 for a Nevada attorney with more than 30 years of experience.) Hourly rates of $500 to $641 have been found reasonable for attorneys with between 17 and 38 years of experience. *See WSOU Invs., LLC v. Salesforce, Inc.*, No. 3:23-CV-00023-RCJ-CSD, 2024 WL 307617, at *5 (D. Nev. Jan. 26, 2024) ($600 for attorneys with 23 years of experience); *Smith & Wesson Brands, Inc. v. SW North America, Inc.*, No. 2:22-cv-01773-JCM-EJY, 2023 WL 7279950, at *3 (D. Nev. Nov. 3, 2023) ($550 for attorney with over 25 years of experience). Considering the significant litigation experience and substantive expertise of Mr. Ryan, Mr. Lukas, and Mr. Donahey, the Court finds Mr. Ryan's hourly rate of $560 to be reasonable and assigns that rate to Mr. Ryan, Mr. Lukas, and Mr. Donahey.

The Court assigns the generic rates that are considered reasonable for associates

and paralegals. In the unofficial Northern District of Nevada, the Court has found hourly rates of $250 to $300 for associates to be reasonable. *See Zap's Elec., LLC v. Monarch Constr., LLC*, No. 3:19-CV-00603-CLB, 2024 WL 1721002, at *8 (D. Nev. Apr. 18, 2024) ($275 for associates with two to ten years of experience); *WSOU Invs., LLC v. Salesforce, Inc.*, No. 3:23-CV-00023-RCJ-CSD, 2024 WL 307617, at *7 (D. Nev. Jan. 26, 2024) ($300 for associates with three years of experience); *Flynn v. Love*, No. 3:19-CV-00239-MMD-CLB, 2023 WL 3080494, at *3 (D. Nev. Apr. 25, 2023) ($250 for an associate with four years of experience and $300 for an associate of eight years of experience). The Court has consistently found the reasonable hourly rate of paralegals to be $125. *See Smith & Wesson Brands, Inc. v. SW N. Am., Inc.*, No. 2:22-CV-01773-JCM-EJY, 2023 WL 7279950, at *3 (D. Nev. Nov. 3, 2023); *Flynn v. Love*, No. 3:19-CV-00239-MMD-CLB, 2023 WL 3080494, at *3 (D. Nev. Apr. 25, 2023).

Accordingly, the Court finds the following to be reasonable hourly rates:

| Name | Hourly Rate |
|------|-------------|
| Bob Ryan, Esq. | $560.00 |
| Timothy Lukas, Esq. | $560.00 |
| Teague Donahey, Esq. | $520.15[3] |
| Benjamin Simler, Esq. | $275.00 |
| Adam Hubbard, Esq. | $275.00 |
| Cyndy Arnold (Paralegal) | $125.00 |

## 2.    Hours Reasonably Expended

The Court next considers the hours expended on the tasks outlined in Defendants billing entries. The party seeking an award of fees must submit evidence supporting the hours worked. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* The Court should exclude from the initial fee calculation hours that are

---

[3]    Mr. Ryan's declaration notes an average hourly rate of $520.15 for Mr. Donahey and the Court uses that rate for Mr. Donahey instead of $560.00. (ECF No. 232-1 at 5.)

not reasonably expended. *Id.* at 433-34. The Court may exclude hours that are not reasonable due to overstaffing, duplication of effort, excessiveness, and otherwise unnecessary to the issue. *Id.* at 434. In other words, the Court has discretion to "trim fat" from, or otherwise reduce, the number of hours claimed to have been spent on the case. *Edwards v. Nat'l Business Factors, Inc.*, 897 F.Supp 458, 460 (D. Nev. 1995) (quotation omitted); *see Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992). "Generally, 'the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.'" *Y.Z. ex rel. Arvizu v. Clark Cnty. Sch. Dist.*, 54 F. Supp. 3d 1171, 1180 (D. Nev. 2014) (quoting *Moreno*, 534 F.3d at 1112).

As stated above, the Court's exceptionality finding is limited to when the case was filed and litigated in the Central District of California. Any hours spent litigating the present case once the case was entered into the District of Nevada's docket will not be considered. The present suit was initiated in the Central District of California on November 19, 2018, (ECF No. 1), and transferred to the District of Nevada's docketed on March 1, 2019, (ECF No. 62). According to Defendants amended billing entries, 583.7 hours was billed during that period of time. (ECF No. 245-2.)

While 583.7 hours of work is a significant amount of time spent in three and a half months, the underlying considerations justify the hours billed. During the relevant period, Defendants billed for tasks related to addressing Plaintiffs' complaint, drafting and litigating motions to dismiss, transfer, and intervene, while also spending significant time attempting to confer in good faith with Mr. Lazo. The substantive issues of this suit are complex and numerous, requiring expertise not typical of the everyday litigant. As seen in the Defendants' billing entries, the fact that the suit was filed in the Central District of California required new substantive and procedural research and an understanding of the local rules that the parties were not familiar with. (*See* ECF No. 245-2 at 15, 19-22.) The fact that several Defendants were sued, while also considering other non-named parties like Chemeon ST may have had an interest in this suit, raises issues of an expanded

attorney-client relationship and the scope of that relationship.

Furthermore, the Court's review of the billing entries highlights the fact that Mr. Lazo's conduct required Defendants to spend extra time that otherwise would not have been needed. For example, on January 2, 2019, Mr. Ryan billed 9.5 hours where he notes, in detail, his attempts confer with Mr. Lazo, the difficulty Mr. Ryan had with contacting Mr. Lazo, and Mr. Lazo's "refusal to communicate with us until January 12." (ECF No. 245-2 at 19.) A few days later, Mr. Ryan notes in his billing entries "[c]orrespondence with Mr. Semas' counsel confirming his insults of Mr. Hoy and me during our telephone conference" and "Mr. Lazo's apparent unawareness of these rules" in reference to the local rules for the Central District of California. (*Id.* at 22.) In the same timeframe, Mr. Lazo "screamed" at Mr. Ryan when Mr. Ryan attempted to contact Mr. Lazo to set-up time to meet and confer. (ECF No. 246 at 4 (quoting ECF 26-2 at 5.) Plaintiffs' current counsel also acknowledges that some of his time was spent dealing with Mr. Lazo's improper conduct. (*Id.*) It is clear to the Court that the hours incurred by the Defendants to litigate this suit were exacerbated by Mr. Lazo's unprofessionalism. *See Jadwin v. Cnty. Of Kern*, 767 F.Supp.2d 1069, 1131 (E.D. Cal 2011) (noting that "it would be reasonable to" award fees on the basis of counsel's "unprofessional conduct through [the] case"); *Housing Rights Center v. Sterling*, No. CV 03-859-DSF, 2005 WL 3320738, at *3 (C.D. Cal. November 1, 2005) (noting that it is "totally inappropriate" to "reduce fees that were due in significant part to the sometimes egregious defense conduct" and that there was a "large amount of unnecessary work" as a result of "scorched earth litigation tactics").

Plaintiffs contend that it is "impractical . . . to have any confidence that the Amended Billing Listing excludes all work that is related to other matters" and that the entries include work for other cases. (ECF Nos. 234 at 18-19; 246 at 5.) The Court acknowledges this concern but based on the Court's review of the amended billing entries, the narrowed applicable time of exceptionality, and the fact that the substantive issues of this case overlap with that of *Chemeon*, as noted in the Court's ordering

1    dismissing this case due to claim preclusion, the Court cannot conclude the amount of

2    hours expended during the applicable period were unreasonable.

3    Thus, based on this Court's determination of reasonable hourly rates and hours

4    reasonably expended, the following fee computation applies:

| Name | Rate | Allowable Hours | Amount |
|---|---|---|---|
| Bob Ryan, Esq. | $560.00 | 121.1 | $67,816.00 |
| Timothy Lukas, Esq. | $560.00 | 30 | $16,800.00 |
| Teague Donahey, Esq. | $520.15 | 168.95 | $87,879.34 |
| Benjamin Simler, Esq. | $275.00 | 150.95 | $41,511.25 |
| Adam Hubbard, Esq. | $275.00 | 107.6 | $29,590.00 |
| Cyndy Arnold (Paralegal) | $125.00 | 5.1 | $637.50 |
| **TOTAL** | | **583.7** | **$244,234.09** |

### 3.    *Kerr*/Local Rule 54-14 Factors

Having considered the hourly rates and the billing entries provided by Defendants,
the Court must decide whether to increase or reduce the lodestar amount based upon the
*Kerr* factors not already included in the initial lodestar calculation. *Fischer*, 214 F.3d at
1119. The *Kerr* factors are also incorporated into Local Rule 54-14. The Court has
considered all the relevant factors and also the fact that the Court has limited the
exceptionality finding and significantly reduced the amount of fees to be awarded by more
than half of the originally requested amount, the Court finds that no other *Kerr* factors
warrant enhancement or reduction of the fees. Furthermore, the Court's review of attorney
fee awards in the related cases of $375,635.55, $748,397.25, and $383,850.80
demonstrates that an award of $244,234.09 is reasonable within the totality of
circumstances. (*See* ECF Nos. 232-3 at 18, 232-4 at 3; 232-5 at 3.)

Therefore, based on the discussion above, Defendants are entitled to recover
**$244,234.09** in attorney's fees.

///

### C.    Mr. Lazo's Conduct and Liability

Defendants ask the Court to hold Mr. Lazo jointly and severally for attorney fees incurred from the inception of the case through June 30, 2022, when Mr. Lazo withdrew from representation, as a sanction under the Court's powers under Local Rule IA 11-8, its inherent powers, an under 28 U.S.C. § 1927. (ECF No. 232 at 22-25.)

"The common law allows a court to assess attorney's fees against a losing party that has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Rodriguez v. United States*, 542 F.3d 704, 709 (9th Cir. 2008) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)). In *Chambers v. NASCO, Inc.*, the Supreme Court affirmed the District Court's "reliance on [its] inherent power" to sanction the Petitioner and his counsel when their conduct "evidence[d] bad faith and an attempt to perpetrate a fraud on the court." 501 U.S. at 48-50.

28 U.S.C. § 1927 allows the Court to award attorney fees and costs against "attorney . . . who . . .multiplies the proceedings in any case unreasonably and vexatiously." The Court may find bad faith under section 1927 when "'an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent.'" *Blixseth v. Yellowstone Mountain Club*, LLC, 796 F.3d 1004, 1007 (9th Cir. 2015) (quoting *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir.1989)). Tactics swaying from one's "duty of good faith and candor in dealing with the judiciary" is grounds for sanctions under section 1927. *Id.* (citing *United States v. Associated Convalescent Enters., Inc.*, 766 F.2d 1342, 1346 (9th Cir. 1985)).

While extraordinary, the Ninth Circuit has permitted counsel to be jointly and severally liable for attorney fees awards when they have acted in bad faith, filed frivolous claims, or violated their ethical duties. *See Caputo v. Tungsten Heavy Powder, Inc.*, 96 F.4th 1111, 1121 (9th Cir. 2024) (adopting the Special Master's recommendation to hold three attorneys joint and severally liable with Respondent for attorney fees pursuant to § 1927); *West Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1528 (9th Cir. 1990) (upholding § 1927 sanctions against plaintiff and their counsel because "bad faith is

present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent."); *see also Baker v. Meiling*, No. 3:20-CV-00518-MMD-CLB, 2022 WL 1059476, at *9 (D. Nev. Feb. 24, 2022), *aff'd*, No. 22-15503, 2023 WL 8643233 (9th Cir. Dec. 14, 2023); *Langer v. Badger Co., LLC*, No. 18CV934-LAB (AGS), 2020 WL 7181076, at *8 (S.D. Cal. Dec. 7, 2020) (finding Plaintiff and their counsel jointly and several liable for the attorney fees award due to counsel's bad faith under the Court's inherent power and § 1927).

The Court finds Mr. Lazo's attempt to forum shop and litigate this case in the Central District of California to be in bad faith. Mr. Lazo's "thinly-veiled attempt to construe this case as a separate dispute by not naming [Chemeon ST] as a party" was a blatant effort to forum shop, harass the Defendants, and waste the Court's and Defendants' time and resources. (ECF No. 61.) As discussed above, Mr. Lazo's attempt to get a second bite at the apple and "shake the tree" by filing the identical claims of *Chemeon* in the Central District of California is textbook forum shopping.

But this case is not the only time Mr. Lazo attempted to forum shop and seek a second bite at the apple by filing identical claims in another jurisdiction. In *Baker v. Meiling*, Judge Du found Mr. Lazo to be engaged in blatant forum shopping and thus jointly and severally liable for the full amount of attorney fees that Defendants were entitled to recover. *See Baker v. Meiling*, No. 3:20-CV-00518-MMD-CLB, 2022 WL 1059476, at *9 (D. Nev. Feb. 24, 2022), *aff'd*, No. 22-15503, 2023 WL 8643233 (9th Cir. Dec. 14, 2023). Mr. Lazo did the same in this case. As litigation was pending in the District of Nevada, Mr. Lazo filed identical claims in another jurisdiction, then attempted to resist transfer, all while acting unprofessionally with co-counsel, opposing counsel, and the Court. Had Mr. Lazo filed this suit originally with the District of Nevada or sought to add his claims to the pending litigation, Defendants would not have had to seek transfer and likely would have incurred a fraction of the 583.7 hours to defend the claims of this suit.

Plaintiffs' sole argument against holding Mr. Lazo jointly and severally liable is that the fees Defendants seek "appear to be driven by animosity towards Mr. Lazo." (ECF No.

234 at 21.) But the Court cannot find merit with this argument given the history of Mr. Lazo's conduct within this case, the fact that at least two other judges have taken note of Mr. Lazo's unprofessional conduct and tactics, and the well-documented unprofessional conduct by Mr. Lazo within the Defendants' billing entries. (*See* ECF Nos. 61; 232-4; 245-2.) Furthermore, Plaintiffs even cite to Mr. Lazo's unprofessional conduct of "scream[ing]" and insulting co-counsel and opposing counsel during early attempts to meet and confer. (ECF No. 234 at 21 (quoting ECF No. 26-2 at 5).)[4] It is difficult to conclude that Mr. Lazo was not aware that his conduct would harass Defendants and waste the Court's time.

Thus, the Court finds Mr. Lazo's attempt to forum shop and his persistent unprofessional conduct to be in bad faith. Mr. Lazo is jointly and severally liable for the full amount of attorney fees during the relevant time period.

///
///
///
///
///
///
///
///
///
///
///
///
///
///

---

[4]    In his Declaration, Mr. Ryan states that at one point, Mr. Lazo "aggressively yelled" at him. (ECF No. 26-2 at 5.) Plaintiffs state Mr. Lazo "screamed" and called Plaintiff's current counsel, Mr. Hoy, a "whimp." (ECF No. 246 at 4.) It goes without saying that none of this is acceptable conduct by an attorney and the Court commends Mr. Ryan and Mr. Hoy for their professionalism in the face of such insults and improper conduct.

### III.    CONCLUSION

The Court notes that the parties raised several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion.

**IT IS ORDERED** that Defendants' request for judicial notice, (ECF No. 233), is **GRANTED IN PART** as to Exhibits Three, Four, and Five of Defendants' motion, and **DENIED IN PART** as to Exhibits 6 through 12.

**IT IS FURTHER ORDERED** that Defendants' motion for attorneys' fees (ECF No. 232), is **GRANTED**. Defendants are awarded the sum of **$244,234.09** in attorney's fees payable to Defendants' counsel within **60 days** of the date of this order.

**IT IS FURTHER ORDERED** that **PLAINTIFFS AND MARC YOUSSEF LAZO** (in his individual capacity) are **JOINTLY AND SEVERALLY LIABLE** to Defendants in the amount of **$244,234.09**.

**DATED**: ___March 14, 2025___.

**UNITED STATES MAGISTRATE JUDGE**